MILLS, Judge,
dissents:
I dissent. I would reverse the Career Service Commission. I would reinstate the Department of Corrections’ dismissal of Helton.
In my opinion, the Commission’s order is not supported by competent substantial evidence and is a gross abuse of discretion.
Helton was employed by the Department of Corrections as a Senior Registered Nurse I at Florida Correctional Institute. On 4 May 1984 Helton was notified that she was dismissed pursuant to an “Extraordinary Dismissal” based on “your negligence in the performance of duties, your failure to follow proper procedures, your bringing personal prescription drugs (contraband) into the institution without obtaining proper authorization and your working while under the influence of medication without obtaining proper authorization.” The notification cited four specific instances of conduct, all of which occurred in April 1984. According to the notification, Helton (1) failed to provide immediate emergency treatment to an inmate brought to the nurses station with head wounds and bleeding, (2) attempted to administer the drug Inderal to an inmate despite a doctor’s order of discontinuance, (3) left the clinic at the end of her shift without securing several syringes, (4) admitted to bringing several prescription drugs into the institution without reporting to the officer in charge.
The Commission’s order agrees that Hel-ton was negligent in failing to examine inmate Mosley’s head injury and that she failed to follow proper procedure when she inquired of Lurea Clark whether she would take the medication which the doctor had ordered discontinued. Helton was also found to have been negligent in leaving the syringes on the desk, and in bringing prescription medication into the institution in violation of agency rules. The Commission concluded, however, “that the acts and omissions of Helton ... did not justify the severity of the action of dismissal” and reduced the dismissal to suspension without pay for four months.
The offenses committed by Helton were serious, particularly since they occurred in a prison setting. The syringes can be used as weapons or for illegal drugs. Shortly before April 1984 special emphasis was placed on the need to secure and account for syringes. Helton was on duty, alone, at night and jeopardized the institution’s security with her negligence.
Helton also inquired of an in-transit, schizophrenic inmate whether she would take a discontinued medication. This was a serious act of misjudgment.
Helton’s response to inmate Mosley’s head injury was callous and indifferent. Head wounds require immediate attention and their seriousness can be determined only by close examination.
Helton was found to have brought prescription drugs into the institution. The purpose of the requirement that prescription drugs be authorized exists so that a determination can be made as to the medication’s effect on the employee’s ability to perform. A reduced ability to function creates extreme hazards to the institution. The effects of the medication could cause her to be unable to render emergency aid or to improperly treat an inmate.
All of the offenses show a nurse who is not functioning carefully and properly. As a nurse, Helton is held to a high standard of performance, particularly in the dangerous setting of a prison. Once the Department had notice of Helton’s misconduct, it could not retain her as a nurse.
Helton’s conduct violated numerous rules and dismissal was a permissible penalty under the Department’s rules. It was a *16 gross abuse of discretion for the Commission to overrule an agency decision made in accordance with established guidelines and policies.
The Commission’s finding that dismissal was too severe is not supported by competent substantial evidence.
I would reverse.